# United States District Court
# Central District of California

| | |
|---|---|
| BRIANA CASH,<br><br>            Plaintiff/Counterdefendant,<br><br>      v.<br><br>INTERSCOPE GEFFEN A AND M RECORDS et al.,<br><br>            Defendants/Counterclaimants. | Case № 2:22-cv-01900-ODW (MAAx)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [79] [85]** |

## I.      INTRODUCTION

Plaintiff-Counterdefendant Briana Cash brings this action against Defendants-Counterclaimants Interscope Records and Brianna Castro (collectively, "Defendants"), alleging trademark infringement for Castro's former use of the stage name "Brianna Cash." (*See* First Am. Compl. ("FAC"), ECF No. 31.)  Defendants now move under Federal Rule of Civil Procedure ("Rule") 56 for an order (1) dismissing with prejudice Cash's FAC in its entirety, and (2) entering favorable judgment on Defendants' counterclaim for declaratory relief.  (Mot. Summ. J. ("Mot." or "Motion"), ECF Nos. 79 (unsealed, redacted), 85 (sealed, unredacted).)  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

**A. Plaintiff Briana Cash and Plaintiff's Factual Disputes**

Cash is an independent musical artist whose "main styles as a performer are Jazz, Pop / Adult Contemporary, R&B and Adult Alternative." (Decl. Marc E. Mayer ISO Mot. ("Mayer Decl.") Ex. 70 ("Cash Website"), ECF No. 79-5.) Since 2008, Plaintiff has released to the public three musical albums, one EP, and a few "singles." (Statements ¶ 46, ECF Nos. 96 (unsealed, redacted), 99 (sealed, unredacted).)

The Court takes due notice that Cash disputes both of these Statements. The Court also notes that each of Cash's disputes is either unsupported, immaterial, or actually serves to confirm the Statement. (*See* SGD 109, ECF Nos. 89-1 (unsealed, redacted), 92-1 (sealed, redacted).) For example, Cash relies on Exhibits K and L— screenshots of Cash's Spotify profile—showing three albums, one EP, and several singles (thereby confirming the statement). (*See* Decl. Joanna Ardalan ISO Opp'n ("Ardalan Decl.") Exs. K, L, ECF No. 89-13, 89-14.) Cash's next basis for dispute, Exhibit 14, is an illegible printout of an unformatted text file. (*See* Decl. Briana Cash ISO Opp'n ("Cash Decl.") Ex. 14, ECF No. 89-35.) Third, Cash's contention that she "donated [her] song 'It's Christmas Time and I Feel Love'" has no relevance to the Statement. (*See id.* ¶ 14.) Accordingly, the Court considers Defendants' Statement undisputed.

Cash also disputes the statement that she "holds herself out as a singer-songwriter who performs 'adult contemporary,' 'Americana,' and Christmas music," (SGD 43), despite this statement coming directly from Cash's own website, (see Cash Website). To dispute this statement, Cash cites to an audio exhibit for one singular

---

[2] Unless otherwise noted, the Court derives the factual background from the parties' Statements of Uncontroverted Fact ("SUF"), Statements of Genuine Disputes ("SGD"), and Responses thereto (collectively, the "Statements"), in addition to the parties' clearly and specifically cited evidence. *See* C.D. Cal. L.R. 56-1 to 56-4.

song that was released by another artist. (SGD 43.) This is a fruitless attempt at disputing the statement in question.

Overall, this is a common issue throughout Cash's SGD. Cash consistently disputes statements in the SUF with irrelevant, unnecessary, illegible, and inadmissible evidence. At times, Cash appears to dispute portions of statements without offering any support whatsoever. (*See, e.g.*, SGD 55.) Other times, Cash disputes an entire statement by only contesting the validity of one of many supporting documents provided by Defendants. (*See, e.g.*, SGD 3.) As a final example, Cash disputes evidence on the basis of "hearsay" because there is "no documentary evidence supporting the same," completely disregarding that this is neither a legitimate factual dispute nor a proper basis for a hearsay objection. (SGD 7.)

"[D]isputing a material fact without any reasonable basis for doing so . . . shall be grounds for sanctions." (Scheduling and Case Management Order ¶ 6(f)(i), ECF No. 42.) "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced in the [SUF], the [SGD], and the Response to the [SGD]." C.D. Cal. L.R. 56-4; see also *Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1162 n.1 (C.D. Cal. 2013) ("[J]udges are not like pigs, hunting for truffles buried in briefs."). The parties bear the obligation to lay out their support clearly. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). Accordingly, unless otherwise noted, the Court finds the remaining material facts as recited herein undisputed.

**B.   Defendant Briana Castro and Interscope Records**

Castro is a songwriter and recording artist who performs and records R&B and hip-hop music. (*Id.* ¶ 1.) By 2008, Castro began performing professionally under the stage-name, "Brianna Cash." (*Id.* ¶ 2–3.) By 2014, Castro began gaining popularity, and, as "Brianna Cash," was nominated for "Alternative Artist of the Year" at the Philly Hip Hop Awards. (*Id.* ¶ 7.) Over the next several years, "Brianna Cash"

performed with numerous well-known artists, and she co-wrote a song with rapper Tory Lanez. (*Id.* ¶¶ 10–13.)

In 2017, Castro entered into an Exclusive Recording Agreement with Universal Music Group ("UMG")'s Interscope Records. (*Id.* ¶ 22.) UMG invested "tens of thousands of dollars into marketing and building awareness for its artist ('Brianna Cash') in 2019 and 2020," culminating in the release of Castro's single titled "Numb," which gained significant notoriety and public acclaim. (*Id.* ¶¶ 27–28.)

### C. The Present Dispute and Defendants' Motion

On May 15, 2020, Plaintiff Briana Cash sent UMG a letter demanding that UMG cease from using the name "Brianna Cash." (*Id.* ¶ 16, 109.) This was the first instance where Cash complained to either Castro or Interscope Records about Castro's use of the stage name "Brianna Cash." (*Id.* ¶ 17.) In October 2020, UMG contacted digital streaming platforms to change the artist name and profile from "Brianna Cash" to "Brianna Castro." (*Id.* ¶ 32.) Beginning in 2021, UMG released Castro's music under the name "Brianna Castro," and her appearances were promoted under the name "Brianna Castro" as well. (*Id.* ¶ 37–38.)

Effective December 15, 2020, Plaintiff Briana Cash owns a federal trademark registration for the BRIANA CASH mark in the United States. (FAC Ex. A ("Trademark Registration"), ECF No. 31-1.) The registration covers goods and services in three classes: (1) "Compact discs featuring prerecorded music; downloadable musical sound recordings; downloadable electronic sheet music," (2) "Streaming of prerecorded, non-downloadable music via a global computer network," and (3) "Entertainment services, namely, live performances by a musical artist; production of music; presentation of live show performances; supervision of music for television programs, namely, providing advice and consultation regarding musical selections and arrangements for the televised programs; musical composition and song-writing services for others." (*Id.*)

On March 23, 2022, Cash initiated this action, (Compl., ECF No. 1), alleging (1) trademark infringement in violation of 15 U.S.C. § 1114 / Lanham Act § 32; (2) false designation of origin, passing off and unfair competition under 15 U.S.C. § 1125(a) / Lanham Act § 43(a); and (3) common law trademark infringement and unfair competition, (FAC ¶¶ 30–66).[3]  On August 22, 2022, Defendants filed an Answer and Counterclaim against Cash, seeking declaratory relief that Castro's use of the stage name "Brianna Cash" does not infringe on Cash's trademark rights. (Answer, ECF No. 35; Countercl., ECF No. 36.)

Under Rule 56, Defendants now move for summary judgment. Specifically, Defendants seek an order (1) dismissing with prejudice Cash's FAC in its entirety, and (2) entering favorable judgment on Defendants' counterclaim for declaratory relief. (Mot.)

### III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See id.* at 324; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved

---

[3] By joint stipulation, the Court dismissed Plaintiff's fourth cause of action for right of publicity with prejudice. (Order Granting Stip., ECF No. 38.)

in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

## IV. DISCUSSION

Defendants seek an order (1) dismissing Cash's FAC in its entirety, and (2) entering favorable judgment on Defendants' counterclaim for declaratory relief. (Mot.) Before addressing Defendants' requests in turn, the Court resolves Defendants' evidentiary objections.

### A. Evidentiary Objections

As a preliminary matter, Defendants raise numerous objections to evidence presented throughout the various MSJ filings. (*See* Defs.' Evid. Objs., ECF No. 96-2.)

First, Defendants object to Exhibit 23 of Cash's Declaration, which purports to represent documents "downloaded from CDBaby that reflect sales/streams of [Cash's] music." (Cash Decl. ¶ 14; *see also id.* Ex. 23, ECF Nos. 89-44 (unsealed, redacted), 92-7 (sealed, unredacted).) This document represents 814 pages of what appears to be a voluminous, unformatted, mostly illegible, and entirely incomprehensible printout of a text document. Cash does not summarize the information contained within the document, nor does she provide any guidance on how the Court should read it. The document is untitled, undated, and provided without any explanation as to how it was created. These hundreds of pages of unintelligible spreadsheet line items in non-native format without summary or explanation are entirely unhelpful and unacceptable. The Court **SUSTAINS** Defendants' objection and **STRIKES** Exhibit 23 of Cash's Declaration.

Next, Defendants object to Exhibit 36 of the Cash Declaration, which represents an email "quote" from Chris Bastardi on "how much [Cash] would have to spend to correct Interscope's infringement through advertising." (Cash Decl. ¶ 21; *see also id.* Ex. 36, ECF No. 89-57.) The expert discovery cutoff in this action passed on March 18, 2024. (Min. Order, ECF No. 74.) Pursuant to this deadline, "[i]f expert witnesses are to be called at trial, the parties shall designate affirmative experts to be called at trial and provide reports required by [Rule] 26(a)(2)(B) *not later than eight weeks prior to the expert discovery cut-off date*." (Scheduling and Case Management Order 3 (emphasis added).) Accordingly, in this case, the parties' deadline to designate affirmative experts and provide reports passed on January 22, 2024. However, Cash disclosed this expert's identity and report only on February 26, 2024, over a month after the deadline to do so had lapsed. (*See* Decl. Alexandra Anfuso ISO Reply ("Anfuso Decl.") ¶ 6, ECF No. 96-3.)

A party who fails to timely provide Rule 26(a) disclosures is not permitted "to use that information . . . to supply evidence on a motion . . . , unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Due to Cash's untimely disclosure, Defendants were unable to depose Bastardi about the contents of the email quote prior to the deadline. In such instances, it is appropriate for courts to strike the disclosure. *See Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) ("[T]he district court did not abuse its discretion in disregarding the untimely designation and report of plaintiff's expert."). The Court **SUSTAINS** Defendants' objection and **STRIKES** Exhibit 36 of Cash's Declaration.

All other objections are **OVERRULED**. When the challenged evidence is unnecessary to the resolution of the summary judgment motion or supports facts not in dispute, the Court need not resolve those objections. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006) (proceeding with only necessary rulings on evidentiary objections). Furthermore, evidentiary objections in motions for summary judgment are typically unnecessary and not useful. This is because, "[r]egardless of whether a party objects, the Court of Appeals will always recognize plain error." *Burch*, 433 F. Supp. 2d at 1119 (first citing Fed. R. Evid. 103(d); and then citing *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 357 (9th Cir. 1996)). "Nevertheless, attorneys routinely raise every objection imaginable without regard to whether the objections are necessary, or even useful, given the nature of summary judgment motions in general, and the facts of their cases in particular." *Id.* Evidentiary objections based "on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Id.* "Instead of *objecting*, parties should simply *argue* that the facts are not material." *Id.*

**B.    Cash's Trademark Infringement Claims Against Defendants**

To survive Defendants' motion for summary judgment, Cash "must prove both the fact and the amount of damage." *Thrive Nat. Care, Inc v. Thrive Causemetics,*

*Inc.*, 2:20-cv-9091-PA (ASx), 2021 WL 4813257, at *7 (C.D. Cal. Oct. 6, 2021) (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) (abrogated on other grounds)). Here, Cash's only basis for relief is "corrective advertising," which serves to "restore the value plaintiff's trademark has lost due to defendant's infringement." (Opp'n 21–22); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995).

"An award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole. It does so by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement." *Wag Hotels, Inc. v. Wag Labs, Inc.*, No. 20-cv-01326-BLF, 2023 WL 3605977, at *9 (N.D. Cal. May 22, 2023) (quoting *Adray*, 76 F.3d at 988). "A court may award compensation for future advertising that must be undertaken to restore the value of a trademark." *Id.* "A plaintiff need not show a specific measure of harm to its goodwill and reputation in order to recover corrective damages," but "it still must present non-speculative evidence that goodwill and reputation—that is, the value of its mark—was damaged in some way." *Id.* (quoting *Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576, at *5 (N.D. Cal. July 14, 2011)).

To support her request for relief, Cash argues that "[s]he produced . . . quotes during discovery," (Opp'n 21–22), seemingly referring to the email "quote" from Chris Bastardi that the Court struck above for failure to comply with Rule 26. However, even if the Court did consider this document, it provides no evidence of any damages to Cash's trademark. (*See* Cash Decl. Ex. 36.) Rather, it assumes that "reputational damage" has occurred, and provides no basis or explanation of what evidence was considered in making that determination. Other than this single inadmissible document, Cash fails to provide the Court with any other facts, evidence, or legal argument for why her claim seeking corrective advertising should survive. (*See id.*)

The "failure to provide any evidence of diminution of value of [plaintiff's] mark" is "fatal" to a request for corrective advertising damages. *Wag Hotels*, 2023 WL 3605977, at *9; *see also Int'l Oddities v. Rec.*, No. 2:12-cv-3934-CAS (VBKx), 2013 WL 3864050, at *14 (C.D. Cal. July 22, 2013) (in a motion for summary judgment, denying plaintiff's request for the costs of corrective advertising because "plaintiff has offered only speculative evidence as to the potential loss of goodwill or business reputation that it has suffered"). The lack of any admissible evidence demonstrating the value of her alleged trademark was damaged precludes her claim for "corrective advertising." Therefore, due to Cash's failure to produce any admissible evidence on the harm or diminished value of her mark, Cash fails to support her only theory for recovery, and her claims for trademark infringement fail.

Accordingly, Defendants' motion for summary judgment is **GRANTED** on the basis that Cash is not entitled to corrective advertising damages.[4]

### C. Defendants' Counterclaim Against Cash

Defendants also move the Court to enter favorable judgment on Defendants' counterclaim for declaratory relief that Castro's use of the stage name "Brianna Cash" does not infringe on Cash's trademark rights. (*See* Countercl.) The Court finds that Defendants' request fails because there are genuine issues of material fact concerning (1) whether Cash's mark has acquired secondary meaning, and (2) whether Castro's use of the stage name "Brianna Cash" creates a likelihood of confusion.

#### 1. *Secondary Meaning*

Defendants first argue that Cash does not have a valid, protectable trademark because "[s]he has not proffered any expert testimony or other evidence 'indicat[ing] that a significant portion of the consuming public associates [her mark] with the products or services offered by [Plaintiff].'" (Mot. 15 (quoting *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1122 (C.D. Cal. 2003)).)

---

[4] As the Court grants Defendants' Motion on this basis, it does not need to determine whether Cash's claims are barred by laches or whether Cash acquiesced in Castro's use of the stage name "Brianna Cash." (*See* Mot. 9–13.)

"While personal names are not inherently distinctive, they are given protection and treated as strong marks when a party can show that the name has acquired 'secondary meaning.'" *Paul Frank Indus., Inc. v. Sunich*, 502 F. Supp. 2d 1094, 1100 (C.D. Cal. 2007). Secondary meaning is the association consumers have between a mark and a particular source. *Id.* at 1099. "[T]he question of secondary meaning is one of fact." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005) (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir. 1985) (en banc)). A finder of fact considers the following factors to determine whether a descriptive mark has secondary meaning: "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive" (the "*Levi Strauss* Factors"). *Id.* (quoting *Levi Strauss*, 778 F.2d at 1358).

Here, Cash has established a genuine dispute as to whether her mark has established a secondary meaning. Cash has released numerous songs and albums through Spotify, iTunes, and Amazon, each of which was promoted using her mark "Briana Cash." (*See* Cash Decl. ¶ 5.) Cash has also used her mark in connection with her role as a voting member of the Recording Academy. (*Id.* ¶ 8.) To gain voting membership, the Academy considers: "Recordings available for streaming/download through recognized music aggregators," "Documented sales/chart information," "Established, active website/social media/online presence," "active marketing and promotion efforts," "Print material," Press releases," and others. (*See* Ardalan Decl. Ex. B ("Academy Membership").) Cash is also a member of SAG-AFTRA, (Cash Decl. ¶ 8), the Guild of Music Supervisors, (Cash Decl. Ex. 6, ECF No. 89-27; *id.* ¶ 8; Ardalan Decl. Ex. D, ECF No. 89-6), the Society of Composers and Lyricists, (Cash Decl. ¶ 8), and the Alliance for Women Film Composers, (*id.*). Furthermore, by 2019,

Cash's music on Spotify had been streamed approximately 52 thousand times by approximately 26 thousand listeners. (Cash Decl. Ex. 17, ECF No. 89-38.)

Although Defendants provide various arguments for why Cash has failed to establish secondary meaning, (*see, e.g.*, Mot. 15–16 (arguing that Cash's "advertising has been nominal, at best" and that her "record sales are negligible")), viewing the evidence in the light most favorable to Cash, there is a genuine dispute between the parties as to whether Cash's mark had acquired secondary meaning under the four *Levi Strauss* factors above. Therefore, the entry of summary judgment is inappropriate on this issue.

2.  *Likelihood of Confusion*

Next, Defendants argue that, even if Cash does have a protectable trademark, her claims fail because she cannot "demonstrate that an appreciable number of ordinarily prudent purchasers are likely to be misled or confused as to the source of the goods in question." (Mot. 16.)

"Likelihood of confusion, a question of fact, is 'the most important element' of the three components of a protectable mark." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264–65 (9th Cir. 2001) (citation omitted) (quoting *Kendall-Jackson Winery Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1048 (9th Cir. 1998)) (citing *Levi Strauss*, 778 F.2d at 1356 n.5). In fact, "trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual." *Levi Strauss*, 778 F.2d at 1355 n.5.

Likelihood of confusion "exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1243 (9th Cir. 1984)).

Here, Cash has presented admissible evidence that there is a likelihood of confusion among consumers. First, there is substantial similarity between Cash's

| | |
|---|---|
| 1 | Mark and the use of the Castro's stage name by Defendants. *See Jason Scott* |
| 2 | *Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1218 (9th Cir. 2023) ("The |
| 3 | similarity factor is of considerable importance to the likelihood of confusion analysis, |
| 4 | given that the greater the similarity between the two marks at issue, the greater the |
| 5 | likelihood of confusion." (internal quotation marks omitted) (quoting *adidas Am., Inc.* |
| 6 | *v. Skechers USA, Inc.*, 890 F.3d 747, 755 (9th Cir. 2018))). Namely, the only |
| 7 | difference is the presence of one 'n' in "Briana Cash" (Plaintiff's name) and two in |
| 8 | "Brianna Cash" (Castro's stage name). In other words, the two uses are substantially |
| 9 | very similar. Second, Cash has provided examples of instances where the consuming |
| 10 | public has confused the two on social media. There are numerous occasions where |
| 11 | consumers intended to message or tag the account of Brianna Castro but mistakenly |
| 12 | send the message to or tag the account of Briana Cash. (*See* Cash Decl. Ex. 32.) The |
| 13 | degree of the confusion, and whether the confusion is sufficiently "likely," is a |
| 14 | question of fact for the jury. Third, considering the intent of Defendant Interscope, |
| 15 | Cash has submitted evidence indicating that Interscope had knowledge of Cash's |
| 16 | musical profile and affirmatively planned to demote the profile on various streaming |
| 17 | platforms. (*See* Ardalan Decl. Ex. M.) Finally, Cash's and Castro's music are |
| 18 | consumed on the same channels of goods and marketing. Both Cash and Castro |
| 19 | market their music through Spotify, iTunes, Amazon, and Soundcloud. (Cash Decl. |
| 20 | ¶ 7.) |
| 21 |       Considering disfavor for deciding trademark cases in summary judgment |
| 22 | because the ultimate issue is so inherently factual, *Levi Strauss*, 778 F.2d at 1355 n.5, |
| 23 | the Court finds that there is a genuine dispute of material fact regarding the issue of |
| 24 | likelihood of confusion. |
| 25 |       Accordingly, viewing this evidence in the light most favorable to Cash |
| 26 | precludes the entry of summary judgment in Defendants' favor on their counterclaim |
| 27 | for declaratory relief. Therefore, Defendants' motion for entry of summary judgment |
| 28 | on their counterclaim for declaratory relief is **DENIED**. |

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment, dismissing with prejudice Cash's FAC for failure to establish any damages and denying Defendant's request for favorable judgment on their counterclaim for declaratory relief. (ECF Nos. 79, 85.)

**IT IS SO ORDERED.**

July 22, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**